# Richmond.

## BRUNSWICK LAND CORPORATION V. C. H. PERKINSON.

January 16, 1930.

Absent, Chichester and Epes, JJ.

604

The opinion states the case.

*Hammack & Harrison*, for the plaintiff in error.

*Chas. T. Lassiter*, for the defendant in error.

PER CURIAM.

The opinion of the trial judge, Hon. M. R. Peterson, sufficiently states the issue and the reasons which support the judgment. It follows:

"The present action is a proceeding instituted on April 7, 1927, by notice of motion to recover damages for a trespass on the plaintiff's land. The damages claimed represent the estimated value of certain timber cut and removed by the defendant, the undergrowth destroyed, and consequential injury to the freehold, etc.

"As stipulated by the agreement of counsel, the primary question in the case arises upon the defendant's plea of the statute of limitation, the decision of which is referred to the court upon the facts agreed.

"On June 5, 1922, the plaintiff filed in this court a petition under section 5490 of the Code, to which the defendant was made the adverse party, seeking to have determined the boundary between certain lands claimed by the plaintiff and certain adjacent lands claimed by the defendant. The real controversy between the parties was as to their relative rights to a small intermediate location to which each asserted the right of possession. On May 7, 1924, judgment was rendered in favor of the defendant, by which the plaintiff's claim to the right of possession of the parcel in question was denied, and by which this small parcel was in effect awarded to the defendant. On the 4th day of August, 1924, the plaintiff filed its petition in the Supreme Court of Appeals and obtained a writ of error and supersedeas to this judgment. On April 30, 1926, by an order entered in the Special Court of Appeals, the judgment of the circuit court was reversed, and final judgment entered for the plaintiff. The result was, *quoad* the defendant, to affirm the plaintiff's claim of ownership to the debatable area.

"If any trespass were committed by the defendant, as alleged in the notice of motion here, such trespass consisted in the cutting and removal of timber trees

on the parcel of land in controversy, in the first instance—before the institution of the proceeding under section 5490 to determine the common boundary line.

"The stipulation between the parties is as follows:

" 'It is agreed that if the statute of limitations commenced to run upon the completion of the cutting and removal of the timber and ran continually from that date, with no interruptions or suspensions, then the cause was barred upon the institution of the notice of motion, under section 5490, June 5, 1922, final judgment of the circuit court thereupon May 7, 1924, and final judgment on appeal of plaintiff in Special Court of Appeals April 30, 1926.'

" 'In other words the plaintiff claims that either:

" '1. The statute of limitations was suspended in regard to a claim for damages by the bringing of the action under section 5490; or

" '2. It was suspended until the final judgment of the court of appeals in the action under section 5490, which determined the ownership by the plaintiff of the strip of land in dispute; or

" '3. It was suspended between the times of the final judgment of the circuit court and the final judgment of the Court of Appeals in the action under section 5490.'

"The question, therefore, stated specifically and in its strictest terms, is whether the statute of limitations began to run from the time when the trees were cut by the defendant, that is, at some time prior to the commencement of the proceeding under section 5490, or only from the time when the plaintiff's claim to the *locus in quo* was finally determined in the final outcome of this proceeding, the course of which has been set forth; and again, if the statute began to run from the time of the commission of the trespass, whether

the institution of the proceeding under section 5490, or the subsequent proceeding in the appellate court, tolled or suspended its operation until the final determination of that proceeding.

"In other words, stating the question broadly with reference to principle, what effect, if any, does the proceeding under section 5490 have in respect to application of the statute pleaded here by the defendant in bar of the plaintiff's action?

"It is well settled, and needs the citation of no authority to that effect, that the statute begins to run when the right of action accrues. It is equally well settled that in its terms the statute is absolute, admitting of no exception which itself does not recognize, unless under certain extraordinary circumstances, wherein the positive and plain requirements of an equitable estoppel preclude its application. For instance, the pendency of a suit to enforce a right of action, however long protracted, suspends its effect. This, of course, is obvious. It is also held that the defendant, who has by affirmative act deprived the plaintiff of his power to assert his cause of action in due season, as by process of injunction, will not be permitted to avail himself of the statute when this obstruction to the plaintiff's action shall have been at length removed. These qualifications of the statute are, it may be observed, implicit in the general law, and are independent of the exceptions to its operation which the statute itself declares.

"At what precise time the cause of action is to be deemed to have accrued, presents not infrequently a question of nice discrimination between the event creating, or giving rise *per se* to, the cause of action and the event which merely recognizes and ascertains the existence of a cause of action previously existing.

"This distinction is not so subtle, however, as might appear. It is a distinction with a difference, and of the first importance in some instances.

■ "For example, it is generally allowed that when a person *colore officii*, as we would say, or in pursuance of a *bona fide* claim of right, assumes to exercise the powers of a *public* office from which in due course he is subsequently ousted, in consequence of a legal proceeding against him by another claimant whose legal title to the office is successfully established, the statute begins to run from the judgment of the court annulling the pretensions of the incumbent and depriving him of its perquisites. In an action, therefore, by the successful competitor in such litigation, to recover of the previous incumbent the emoluments received by him during his occupancy of the place, the statute begins to run, not from the date of the receipt by him of these emoluments, but from the date of the judgment in the proceeding wherein the title to the office was determined. The controversy in such a case is between the *de facto* officer and the officer *de jure*, not one between a *de jure* officer and a mere intruder or usurper. The judgment of the court thus does more than simply ascertain or recognize an already existing right. In the deciding between the rival claimants, the court founds the claim of the successful candidate or competitor, for the first time, upon a legal basis. It thus by its judgment creates the right to demand the benefits of the office, which otherwise could never have been asserted against the officer *de facto*. Such seems to be the reasoning of the case which has been cited and cases of similar import.

■ "Another class of cases illustrates the principle that pending certain disability to prosecute an action the statute is tolled. But neither mere difficulty nor

■

inconvenience in seeking a legal remedy, nor the fact that a cognate question may be involved in an independent proceeding between the parties, will frustrate the plea of the statute after the lapse of the prescribed period.

"*Daniel* v. *Roper*, 24 Ark. 131, exemplifies this doctrine. A woman who had been held in servitude on the theory that she lacked the qualifications of a free woman, eventually obtained her freedom by the judgment of a competent court in a proper proceeding. She thereupon brought an action against her oppressor for the conversion of certain of her personal effects, appropriated by the defendant while she was held by him in durance. To this action the defendant opposed a plea of the statute. A bill in chancery by which she sought to enjoin this plea was dismissed on the ground that it had been always competent for her to assert her property in these effects by suitable action, and that her right to sue for the recovery of her personal property was, contrary to her contention, not dependent upon the establishment by her of her right to freedom. The restraint upon her liberty was not of itself a legal disability, and, for all that appeared, she could have enforced her right of property at any time as in fact she had enforced her right to liberty of person.

"In *Baker* v. *Boozer*, 58 Ga. 195, there appears a very close approximation in fact and in principle to the case at bar. A sheriff levied and sold under *fi fa* certain effects as the property of the execution debtor; afterwards, the true owner, as claimant under the Georgia statute, in a proper proceeding against the sheriff, recovered possession of his property, and subsequently brought his action against the sheriff for damages sustained by him in consequence of the seizure of his goods. It was held that the statute was

not tolled, while his action to recover the property was pending. Says the opinion in brief: '* * * the right of action accrues at the time of the seizure, and the suit must be commenced within four years thereafter, or it will be barred. The owner of the property cannot change the period of limitation by interposing a claim, litigating the right of property in that case, and treating his damages as not sustained until the claim case has been determined in his favor * * *. * * * if these damages were sufficiently proximate to be recoverable, the reasonable and probable amount of the same might have been anticipated without waiting for the claim case to be brought to a conclusion before commencing an action for the trespass. But the claim was a suit commenced by the claimant, and that circumstance would seem to embarrass greatly the theory on which the present action is founded. There is a provision of law for assessing damages against the claimant, but none for awarding them in his favor.'

"In order that the time during which a former action while pending may be available in repelling the statute in a subsequent case between the parties, it accordingly appears that the cause of action in the two cases must be substantially identical. The Virginia court has evident reference to the true doctrine when it declared in *Nelson* v. *Triplett*, 99 Va. 425, 39 S. E. 150, 151: 'Appellee's unsuccessful action of ejectment led to no change in the possession of the land, and did not stop the running of the statute of limitations.' Citing *Workman* v. *Guthrie*, 29 Penn St. 495, 72 Am. Dec. 654.

"Quite a different case would be presented here had the delay in instituting the action for damages been due to the act of the defendant in staying or suspending the execution of a judgment in the *nisi prius*

court in favor of the plaintiff and pending the prosecution of an appeal by the defendant as the losing party, had such been the case. Clearly in that event, the statute would not have run against the plaintiff's judgment until his judgment became effective upon the final disposition of the writ of error; but it is a judgment in favor of the defendant from which the appeal was taken, the affirmance of which by the appellate court would have operated to sustain the statute for his benefit in any subsequent action on his behalf in virtue of his judgment in the circuit court against the plaintiff.

"In fine, the plaintiff's action to try the right of possession by means of its petition under section 5490 was not incompatible with a concomitant action by it for the defendant's trespass. Had it chosen ejectment as its remedy, it might have claimed such damages in that action. Va. Code, section 5481. At all events, it could have brought the independent action for the tort. But section 5490 makes no provision for the incidental ascertainment of the plaintiff's damages unless the defendant, after the final judgment against him, should file a special petition under chapter 225 of the Code (sections 5491–5505) as was not the case. The gist of the matter is that the plaintiff's right of possession was declared by the judgment of the Special Court of Appeals, in a specific proceeding, limited to a particular object—the determination of a common boundary. The plaintiff might, in addition, by an action of trespass, or on the case, have also sought damages for the defendant's antecedent trespass. It elected to embrace the one, but not the other, remedy. Failing in its object in the former proceeding, it might possibly have failed in the latter, as success in the former augured success in the latter.

It might naturally have thought to avoid a speculation on the event of the proceeding to determine the boundary, and rather to await the issue of that case before undertaking its action for damages, nevertheless this is merely another form of the argument *ab inconvenienti.* A sufficient answer to the argument here is that without resorting at the time to any possessory action, it might forthwith have brought its action for the tort, and have successfully · maintained it on evidence, perhaps less cogent than that necessary to establish its claim of title in fee simple to the premises. In other words, its claim to the right of possession of the land in dispute, while related to its claim for damages for the defendant's trespass, constitutes a distinct and independent subject of action. An observation in the opinion of the court in *Baker* v. *Boozer, supra,* would seem no less pertinent here in the analogy of the circumstances: 'But the claim was a suit commenced by the claimant, and that circumstance would seem to embarrass greatly the theory on which the present action is founded. There is a provision of law for assessing damages against the claimant, but none for awarding them in his favor.'

"Likewise, under section 5490 of the Code, there is a provision of law for assessing damages against the petitioner, under the provisions of chapter 225 of the Code, but none for awarding them in his favor—none, at least, until the defendant divested of the possession of any property in such a proceeding shall have first asserted his claim for improvements.

"I am hence of opinion that the defendant's plea of the statute of limitations is a sufficient defense to the plaintiff's claim, and will enter judgment accordingly."

*Affirmed.*