# CIRCUIT COURT OF THE CITY OF SUFFOLK

Paul D. Seeman
and Patti S. Seeman

    v.

Oxfordshire, L.L.C.,
Rose & Womble Realty Co.,
and Venture Supply, Inc.

    v.

The Porter-Blaine Corp.
and Tobin Trading, Inc.

October 12, 2011

Case No. CL 10-936

BY JUDGE RODHAM T. DELK, JR.

This case involves claims for damages allegedly resulting from the importation, sale, and installation of defective drywall building materials made in China and used for the construction and sale of a residential dwelling in the City of Suffolk.

The plaintiffs, Paul D. Seeman and Patti S. Seeman (collectively "Seeman"), seek damages from Oxfordshire, L.L.C. ("Oxfordshire"), Rose & Womble Realty Company ("Rose & Womble"), and Venture Supply, Inc. ("Venture Supply"), for injuries and losses suffered from the use of defective construction drywall made in China in the construction of their personal residence.

The case came before me on May 24, 2011, upon the demurrers of the defendants, Venture Supply and Rose & Womble to Seeman's complaint.

The history of this case, as it appears according to the pleadings, is that, on April 23, 2007, Seeman purchased a newly-constructed residential dwelling at 312 Tindalls Court, in the City of Suffolk, Virginia, from Oxfordshire, intending it to be their marital home. Rose & Womble was the listing and closing real estate agent for the sale of the house. Venture Supply sold some or all of the drywall materials used in the construction of the house.

At sometime after September 28, 2009, Seeman became aware that Chinese drywall may have been used in the construction of the house, which was confirmed sometime after February 4, 2010. Seeman claims that the use of Chinese drywall in the construction of the house made it uninhabitable, requiring extensive remedial work and permanently reducing the value of the property.

Seeman alleges that Chinese drywall is inherently defective because it emits various sulfide gases and other toxic chemicals that create noxious odors and cause damage and corrosion to various systems within their home, as well as personal and other household property items. They also allege that the chemical compounds have caused or are causing personal injury to them as the occupants of the home. Seeman seeks an award of damages, including treble damages, for personal injuries, property damage, and economic loss by reason of the decreased value of the property.

The history of the litigation to this point in the process is complicated.

Seeman filed this suit against Oxfordshire, Rose & Womble, Venture Supply, and others, alleging breach of implied warranties, negligence, unjust enrichment, private nuisance, and violation of the Virginia Consumer Protection Act.

Venture Supply answered by a special plea of the Statute of Limitations and a demurrer. Oxfordshire answered and filed a third-party complaint against The Porter-Blaine Corp. ("Porter-Blaine"), as installer of the drywall. Rose & Womble answered generally and by demurrer. Porter-Blaine answered generally to Oxfordshire's third-party complaint.

Venture Supply additionally filed a third-party complaint against Tobin Trading, Inc., as an intermediary between Venture Supply and the Chinese manufacturer.

This opinion addresses the demurrers of Venture Supply and Rose & Womble. I have considered the written pleadings as well as the arguments of counsel at the hearing.

## Statute of Limitations

Both Rose & Womble and Venture Supply filed pleas of the statute of limitations, but these were not argued at the hearing and will be taken

under advisement by the Court for thirty days, in order that the pleas may be briefed by counsel if the Court's ruling on them is expected.

*Demurrer*

A demurrer is a dispositive pleading, the purpose of which is to "test[] the legal sufficiency of facts alleged in the pleadings." *See, Schmidt v. Household Finance Corp.*, 276 Va. 108, 112 (2008). The contention is that no cause of action is stated and/or that facts are not alleged upon which the relief claimed can be granted. Virginia Code § 8.01-273(A).

A demurrer admits the truth of all properly pleaded material facts, and all reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. *Schmidt, supra*. However, a demurrer does not admit the correctness of any conclusion of law in the pleading. *Dodge v. Randolph-Macon Woman's College*, 276 Va. 1, 5 (2008).

The "demurrer will be sustained if the [complaint] . . . considered in the light most favorable to . . . [the defendants], fails to state a valid cause of action." *McDermott v. Reynolds*, 260 Va. 98, 100 (2000). In their demurrers to Seeman's claims, Venture Supply and Rose & Womble, in essence, contend that Seeman failed to state claims upon which relief can be granted.

Specifically, as I read the complaint, Seeman makes the following claims, reference being made to the specific paragraphs in the complaint:

19. Misrepresentation as to the drywall;

20. Willful violation of the Virginia Consumer Protection Act;

21. Knowing, and thus willful, negligent and negligent per se, breach of express and implied warranties, private nuisance, and unjust enrichment;

22. Breach of contract to provide a residence free of latent defects that the defendants knew of or should have known of;

23. Refusal to repair;

24. Damages, including personal monetary, physical, mental and emotional, and property; economic loss; loss of use and enjoyment; and, treble damages; as well as attorneys' fees and revocation of licenses.

In considering the demurrer, I first note from the motion for judgment, taken in the light most favorable to Seeman, that Seeman directly contracted only with Oxfordshire and Rose & Womble. From that, I conclude that Seeman lacked any direct contractual relationship with Venture Supply, Porter-Blaine, or Tobin Trading, and therefore, at best, was an incidental third-party beneficiary of the contracts directly involving those entities, as opposed to an intended beneficiary.

One issue not argued on demurrer, but pleaded by Seeman, is the Virginia Consumer Protection Act ("VCPA"), Code of Virginia §§ 59.1-196 et seq. Chinese drywall, as the term is used in this case, is a regulated material under the VCPA. Regulated transactions under the VCPA include:

53. Selling, offering for sale, or using in the construction, remodeling, or repair of any residential dwelling in the Commonwealth, any drywall that the supplier knows or has reason to know is defective drywall. This subdivision shall not apply to the sale or offering for sale of any building or structure in which defective drywall has been permanently installed or affixed.

Code of Virginia § 59.1-200(A)(53).

The term "defective drywall" is defined in the VCPA as:

drywall, or similar building material composed of dried gypsum-based plaster, that (i) as a result of containing the same or greater levels of strontium sulfide that has been found in drywall manufactured in the People's Republic of China and imported into the United States between 2004 and 2007 is capable, when exposed to heat, humidity, or both, of releasing sulfur dioxide, hydrogen sulfide, carbon disulfide, or other sulfur compounds into the air or (ii) has been designated by the U.S. Consumer Product Safety Commission as a product with a product defect that constitutes a substantial product hazard within the meaning of § 15(a)(2) of the Consumer Product Safety Act (§ 15 U.S.C. 2064(a)(2)).

Code of Virginia § 59.1-198, added by 2011 amendment.

From its terms, I conclude that the VCPA does not apply to Rose & Womble, which did not sell or use the defective drywall, and whose only apparent involvement in the case was as a seller's agent, offering the completed dwelling house for sale on behalf of its principal, the owner Oxfordshire.

As to Venture Supply, the VCPA, as currently in effect and containing the Chinese drywall provisions, would clearly apply by virtue of the 2011 amendment. The construction and sale of Seeman's house, however, occurred prior to and on April 23, 2007, predating the 2011 amendment to the VCPA. Other courts have concluded that the VCPA, as written prior to the 2011 amendments, would not apply, as the transactions involving Chinese drywall were beyond the scope of the VCPA as then written. See, *In re Chinese Drywall Cases*, 80 Va. Cir. 69 (2010), an opinion of the Circuit Court of the City of Norfolk; in accord, *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, (Section L, U.S. Dist. Ct. E.D. La., Aug. 4, 2010), citing with approval the Norfolk Circuit Court opinion.

Accordingly, I conclude that the VCPA does not apply to this case.

*Rose & Womble Demurrer*

I will address Rose & Womble's demurrer with respect to the above-numbered counts in the Complaint.

19. Misrepresentation as to the drywall. This was not briefed or argued by Rose & Womble in its brief. Seeman, however, neither pleaded facts nor otherwise addressed the demurrer. I sustain Rose & Womble's demurrer as to this count.

20. Willful violation of the Virginia Consumer Protection Act. Rose & Womble, as the listing real estate agent for Oxfordshire, is excluded from the provisions of the VCPA. Code of Virginia § 59.1-199(F). Additionally, Seeman asserted no facts which would subject Rose & Womble to the VCPA. See, also, my prior discussion of the applicability of the VCPA. I sustain Rose & Womble's demurrer as to this count.

21. Knowing, and thus willful, negligent and negligent per se, breach of express and implied warranties, private nuisance, and unjust enrichment. Seeman alleged no facts, including warranties made or implied by Rose & Womble, to support any claim of breach of warranties. Rose & Womble had no statutory or common law agency relationship with Oxfordshire, its principal, that would establish such upstream warranties, even if they did exist. Code of Virginia § 54.1-2144.

Furthermore, Rose & Womble had no contractual relationship with Seeman, except through a possible real estate listing agreement, and no common law duty as such was alleged. Additionally, Rose & Womble had no specific statutory duties to Seeman, and there was no allegation of benefit conferred to Rose & Womble by Seeman which would give rise to liability for unjust enrichment. See, Schmidt v. Household Finance Corp., 276 Va. 108 (2008).

Additionally, no facts were pleaded which would support any claim against Rose & Womble based upon negligence or negligence per se.

Finally, no facts were alleged to support a claim for private nuisance. There is no alleged action or inaction conducted by a third party, namely Rose & Womble, which could give rise to a claim of private nuisance.

Accordingly, I sustain Rose & Womble's demurrer as to this count.

22. Breach of contract to provide a residence free of latent defects that the defendants knew of or should have known of. It is not alleged, nor have facts been pleaded in support, that Rose & Womble had any such duty. I sustain Rose & Womble's demurrer as to this count.

23. Refusal to repair. Even though not argued, it is not alleged, nor have facts been pleaded in support, that Rose & Womble had any duty of repair. I sustain Rose & Womble's demurrer as to this count.

24. Damages, including personal monetary, physical, mental and emotional, and property; economic loss; loss of use and enjoyment; and, treble damages; as well as attorneys' fees and revocation of licenses. As

to these remedies sought by Seeman, revocation of licenses, claimed as a remedy in the Complaint, is an administrative matter and is clearly not within the jurisdiction of this Court. The balance of the above remedies, even if applicable to Rose & Womble, would be dependent upon trial.

From all of the foregoing, I find that Seeman has failed to state a cause of action against Rose & Womble, and I accordingly sustain the demurrer as to all counts, with leave to Seeman to amend their complaint.

### Venture Supply Demurrer

I will likewise address Venture Supply's demurrer with respect to the above-numbered counts in the Complaint.

19. Misrepresentation as to the drywall. This was not briefed or argued by Venture Supply in its brief. Seeman neither pleaded facts nor otherwise addressed this issue in their complaint. I accordingly sustain Venture Supply's demurrer as to this count.

20. Willful violation of the Virginia Consumer Protection Act. The VCPA would clearly apply to Venture Supply as a "Supplier," Code of Virginia § 59.1-198 definitions. The sale of Chinese drywall by Venture is a regulated transaction under the VCPA. However, the construction and sale of the house occurred on or before April 23, 2007, and prior to the 2011 amendment to the VCPA, which added the specific Chinese drywall provisions. Thus, the issue is whether the VCPA, as written prior to the 2011 amendments, applies to Venture Supply.

As I read the complaint, Venture Supply did not deal directly with Seeman. Therefore, the Chinese drywall was not sold to Seeman for personal, family, or household purposes. Rather, the drywall was sold to the homebuilder for commercial purposes as a component part of a constructed home. Accordingly, I conclude that Venture Supply's transactions involved non-consumer goods, not subject to the VCPA.

> A sale between commercial parties of a good intended for use as a component part in the construction of a building is not a "consumer transaction" within the meaning of the VCPA. . . . Plaintiffs had no direct contact with . . . [Venture Supply]. . . . The transactions in Chinese drywall in which those parties participated involved builders, contractors, and developers and fall outside the VCPA definition of "consumer transactions."

*In re Chinese Drywall Cases*, 80 Va. Cir. 69 at 92 (Norfolk 2010); accord, see *Bindra v. Michael Bowman & Assocs.*, 58 Va. Cir. 47, 2001 Va. Cir. LEXIS 373 (Fairfax County 2001); *Murray v. Royal Constr. Co.*, 61 Va. Cir. 643, 2002 Va. Cir. LEXIS 4273 (Franklin County 2002); and, *Murray v. Dryvit Sys.*, 2002 Va. Cir. LEXIS 420 (Franklin County 2002).

I accordingly sustain Venture Supply's demurrer as to this count.

21. Knowing, and thus willful, negligent and negligent per se, breach of express and implied warranties, private nuisance, and unjust enrichment. Seeman alleged no facts, including warranties made or implied by Venture Supply, to support any claim of breach of express warranties. Furthermore, Seeman had no contractual relationship with Venture Supply. Additionally, it was not alleged that Venture Supply had any specific direct statutory duties to Seeman.

An unaddressed issue is whether Venture Supply was subject, either by the Uniform Commercial Code or otherwise, to implied warranties, including fitness and suitability for the intended purpose of the drywall. This was not addressed either in the briefs or argument.

Seeman claims unjust enrichment. Taking the allegations in the complaint in the light most favorable to Seeman, there was indirect benefit conferred upon Venture Supply by its mere sale of the drywall, although it was not sold to Seeman. Arguably, this could give rise to liability for unjust enrichment. *See, Schmidt v. Household Finance Corp.*, 276 Va. 108 (2008). However, no facts were alleged in support of this.

To state a cause of action for unjust enrichment, Seeman had to allege that: (1) they conferred a benefit on Venture Supply; (2) Venture Supply knew of the benefit and should reasonably have expected to repay Seeman; and (3) Venture Supply accepted or retained the benefit without paying for its value. *See, Schmidt, supra.* The facts, as pleaded by Seeman, fail to show that Seeman and Venture Supply ever dealt directly with each other and simply do not support this claim.

Additionally, no facts were alleged to support Seeman's claim of private nuisance against Venture Supply. A cause of action for private nuisance, as alleged by Seeman, does not stand on the allegations in the complaint, even when taken in the light most favorable to Seeman. There is no alleged action or inaction conducted by a third party, namely Venture Supply, which could give rise to a claim of private nuisance.

As to the claims of negligence, there is no allegation of violation of specific statutory or common law duties on the part of Venture Supply to Seeman which would constitute negligence.

Seeman has also alleged negligence per se. "The doctrine of negligence per se represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person]'." *McGuire v. Hodges*, 273 Va. 199, 206 (2007). To the extent that specific provisions of the Virginia Uniform Statewide Building Code are violated, the Supreme Court of Virginia has permitted specific violations of the code to supply the statutory violation required for negligence per se.

The complaint, however, is silent as to the applicability of the Building Code, if any, as to Venture Supply, which acted solely as a vendor of the drywall. Additionally, the complaint alleged no facts which would

constitute violations of the Building Code which could give rise to liability for negligence. Further, Seeman has not alleged violations of the Building Code by Venture Supply, and, therefore, the claim of negligence per se must fail.

I accordingly sustain the demurrer as to this count.

22. Breach of contract to provide a residence free of latent defects that the defendants knew of or should have known of. It is not alleged, nor have facts been pleaded in support thereof, that Venture Supply had any contract or any such duty to Seeman. I sustain Venture Supply's demurrer as to this count.

23. Refusal to repair. Even though not argued, it is not alleged, nor have facts been pleaded in support, that Venture Supply had any duty of repair. I also sustain Venture Supply's demurrer as to this count.

24. Damages, including personal monetary, physical, mental and emotional, and property; economic loss; loss of use and enjoyment; and, treble damages; as well as attorneys' fees and revocation of licenses. Again, revocation of licenses, claimed as a remedy in the Complaint, is an administrative matter and is clearly not within the jurisdiction of this Court. The balance of the above claims are dependent upon trial and are not subject to demurrer at this juncture.

Seeman seeks to recover economic losses from Venture Supply. Contract law requires that Seeman have specific contract rights under which to recover damages for breach. There is no allegation of privity of contract in this case between Seeman and Venture Supply. Seeman seeks to recover economic losses, which, under the economic loss rule, sound in contract only. Absent privity of contract, one cannot recover purely economic losses for a defendant's negligence. *Sensenbrenner v. Rust*, 236 Va. 419 (1988).

> The "economic loss rule" . . . bars recovery for tort claims alleging strictly economic damages among parties to a contract. . . . In distinguishing damages solely for economic loss from damages for injuries to persons or property, the Supreme Court of Virginia observed that "[m]ost jurisdictions equate economic losses, for which no action in tort will lie, with disappointed economic expectations."

*Gonella v. Lumbermens Mutual Casualty Co.*, 64 Va. Cir. 229 (Fairfax County 2004).

Seeman has alleged no common law or statutory duties on the part of Venture Supply sounding in tort, the breach of which would give rise to damages. With no such duties, there is no tort claim.

From all of the foregoing, I find that Seeman has failed to state a cause of action against Venture Supply. I accordingly sustain the demurrer as to all counts, with leave to Seeman to amend their complaint.